# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

FAIL-SAFE LLC,

                    Plaintiff,

      v.                                                Case No. 08-CV-0310

A.O. SMITH CORPORATION,

                    Defendant.

_____

# ORDER

The court commented in its September 3, 2010 order that this case was the "quintessential example" of how litigation can be "the story of regret," as the parties and attorneys on both sides in this matter had made several "questionable" decisions before this litigation began that ultimately harmed each sides' respective strategic positions. (Docket #195 at 1). The course of this litigation over the past month has made abundantly clear that the parties' counsel's "questionable" decisions did not cease upon the filing of the complaint in this case and extended well to the eve of trial. Indeed, even to the most casual observer, the docket entries in this case portray all too well contentious litigation conduct that might be best described as a cross between a kabuki dance and musical chairs. However, as reflected in the balance of this order, the extended musical interlude has now come to an end leaving the parties and their counsel standing with no place to go – except home. Whether it be in the plaintiff's failure to disclose its members in its initial complaint, or in the parties' multiple requests for a mediation when the parties'

actions suggest virtually no movement in their respective positions, or in the threadbare initial expert reports regarding damages provided by the plaintiff, Fail-Safe, LLC ("FS"), or in the "supplements" to those reports that attempted to repair gaping holes in the initial reports, or in motions, provided by both sides, that rightfully should have been before the court years ago, the docket in this case reflects countless examples of serious inattention to detail on the front end of this ligation, followed by numerous attempts to try to play "catch up" after the case had been scheduled for trial.[1]  The net result has been chaotic litigation that has been, in the words of one Seventh Circuit jurist, "gummed up from the get-go."  *Johnson v. McCaughtry*, 265 F.3d 559, 567 (7th Cir. 2001) (Evans, J., dissenting).  Against this background, six motions have been filed by the defendant, A.O. Smith Corporation ("AOS"), and eight motions have been filed by FS since the court issued its December 23, 2010 order regarding damages.[2]  The court resolves in this order AOS's motion for a judgment on the pleadings with respect to FS's remaining claim

---

[1] The court perhaps is charitable in describing the conduct of the attorneys in this matter as being "inattentive."  As this court has noted in earlier orders, much of the conduct in this case could also be described as "sandbagging" with the intention of backloading disclosures to the other side in a rather thinly veiled attempt to engage in trial by ambush.

[2] In fairness, several of these motions are motions to seal documents on the docket and, while important, are not as intricate as other motions pending before the court.  Having examined the motions to seal (Docket #244,#250, #258, #261, #265), and the relevant material wished to be sealed, the court finds that the relevant materials contain sensitive business information that warrants this court sealing the record.  The court notes, however, that Docket #257 appears to have been erroneously filed as a "motion" when in fact it is a Memorandum of Law in support of Docket #258.

(Docket #237), beginning with examining once again the substantive claim of unjust enrichment under Wisconsin law.

To prevail on an unjust enrichment claim, a plaintiff must prove that: (1) a benefit was "conferred upon the defendant by the plaintiff"; (2) there was an "appreciation by the defendant of the fact of such benefit"; and (3) "acceptance and retention" of the benefit by the defendant, under circumstances such that it would be "inequitable to retain the benefit without payment of the value thereof." *Seegers v. Sprague*, 70 Wis. 2d 997, 1004, 236 N.W.2d 227 (1975). In its summary judgment motion, AOS argued that there was no dispute of fact with regard to whether a benefit was conferred upon the defendant after December of 2004. (Docket #121). In its current motion, the defendant argues that the third prong of unjust enrichment cannot be met in this case, as "Wisconsin law does not allow unjust enrichment claims to go forward under circumstances such as these."[3] (Def.'s Br. at 2).

---

[3] Accordingly, FS's reference to the court's discussion in the summary judgment order regarding the benefit prong of an unjust enrichment is largely irrelevant.

The "circumstances" that AOS references in its briefs to the court are simple. Accepting FS's allegations as true and keeping in mind the law of the case,[4] AOS contacted FS to see if the latter company had an interest in the production of a pool pump motor. (Compl. ¶ 11; Docket #195 at 11-12). In the midst of conversations between the two parties and prior to the parties actually meeting in person, FS's founder sent information, described in the complaint as "hydraulic testing and operational protocols for a load-sensing, suction entrapment-preventive motor," (Compl. ¶ 31), to the defendant. (Docket #195 at 13-14). Elsewhere in the complaint, FS details the nature of the "hydraulic testing and operational protocols" for the pool pump, noting that the information that FS provided to AOS included an "outline of potential new and innovative features that could be designed into the new pump motor" and the "data for the load sensing and delay technology used on" FS's

---

[4] The court made several rulings regarding the claims in FS's complaint in the court's summary judgment order from September 3, 2010. Two related conclusions from that summary judgment order are of particular note for this order. First, the court noted in the summary judgment order that FS had failed to provide any evidence from which a "reasonable jury could find that FS took reasonable efforts to keep its proprietary information confidential," meaning that the "hydraulic testing and operational protocols" that the plaintiff provided to AOS were not "trade secrets" or any other form of protected intellectual property. (Docket #195 at 48). Second, related to the court's conclusion on whether the information FS provided to AOS was a "trade secret," the court noted that there was no evidence to support the plaintiff's claim that the two parties had "actually . . . reached an agreement to jointly-develop a pool pump where the two parties would be sharing the profits of such a venture or exercising joint control over each other in the project." *Id.* at 57. Instead, the court found as a matter of law that all of "the evidence shows the parties were merely bantering back and forth about a potential project where AOS was to produce a device for FS." *Id.* As the court cannot reexamine its earlier rulings, the court accepts those conclusions for purposes of this ruling. *McMasters v. United States*, 260 F.3d 814, 818 (7th Cir. 2001).

LoadTec motor, a motor that had previously been sold to the general public.[5]  *Id.* ¶ 16; (Docket #195 at 6).  Given what was in the complaint and what the court has already ruled, the issue for the court to decide is whether, as a matter of Wisconsin's law regarding the substantive claim of unjust enrichment, principles of equity allow for AOS to retain the benefit of the information FS voluntarily shared with the defendant.  Before proceeding to the analysis of that legal issue, the court turns its attention to the procedural standards animating the motion.

Fed. R. Civ. P. 12(c) allows for a judgment on the pleadings.  *Midwest Gas Servs., Inc. v. Ind. Gas Co.*, 317 F.3d 703, 709 (7th Cir. 2003).  Such a motion should be granted "only if it appears beyond doubt that the plaintiff cannot prove any facts that would support [its] claim for relief."  *Id.*  In evaluating the motion, the court accepts all "well-pleaded allegations in the complaint as true, drawing all reasonable inferences in favor of the plaintiff."  *Id.; see also Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000) ("A complaint may not be dismissed unless it is impossible to prevail under any set of facts that could be proved consistent with the allegations")

---

[5] The complaint's allegations correspond with the court's findings in the summary judgment order.  (Docket #195 at 13-14).  The only reference in the complaint to the "testing and design protocols" that AOS allegedly obtained as a benefit are in paragraph 16 of the complaint.  The complaint references  an AOS employee requesting a LoadTec motor from FS, but the complaint does not state whether FS ever provided such a motor.  (Compl. ¶ 19).

(internal citations omitted).[6]  With these standards in mind, the court addresses the central legal issue.

The central legal issue is not very difficult for this court to resolve, however, as the case law is explicit: under Wisconsin's law of unjust enrichment it is not inequitable for one to benefit from the willful disclosure of information or an idea when such an idea or invention is not protected by some sort of intellectual property right.  *Abbott Laboratories v. Norse Chemical Corp.*, 33 Wis. 2d 445, 468, 147 N.W.2d 529 (1967) ("In view of the fact that no trade secrets were appropriated by the defendants, there was no unjust enrichment and plaintiff is not entitled to restitution.").  In interpreting *Abbott Laboratories*, the Seventh Circuit was even more clear, stating that "Wisconsin law denies recovery for unjust enrichment if all the defendant has done is use (to his profit) an idea that is not a trade secret."  *Confold Pac., Inc. v. Polaris Indus.*, 433 F.3d 952, 957 (7th Cir. 2006).  Here, as the court stated in its earlier order, the "benefits" that AOS received – the crux of FS's entire

---

[6]  The court notes that both parties are unclear as to how the court's findings on summary judgment relate to a judgment on the pleadings.  To the extent the evidentiary issues resolved by the court on summary judgment influence this court's order, the defendant's motion will be treated as a request for summary judgment on the unjust enrichment claim, as both parties have had a reasonable opportunity to present all material relevant to summary judgment and the motion itself clearly anticipates a summary judgment ruling.  *See* Fed. R. Civ. P. 56(f); *cf. In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2nd Cir. 1985) (holding that the "essential inquiry" in conversion of a Rule 12(b)(6) motion to a Rule 56 motion "is whether the appellant should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings.")  The court finds this perfectly acceptable, given the plaintiff's invitation to have the court look at its summary judgment materials in ruling in this order.  (Pl.'s Resp. Br. at 7).  Moreover, the court notes that the court is limited by the law of the case doctrine from reopening legal rulings decided in earlier stages of the same litigation.  *McMasters,* 260 F.3d at 818.  At the end of the day, the issue to be resolved by the defendant's motion is a legal one and the court uses this order to answer the legal question at issue.

remaining claim – is simply information consisting of, at best for FS: (1) a list of features of a proposed motor; (2) general tips or know-how provided by FS; (3) testing data on a publically available motor; and (4) a copy of an unpatented motor.[7] (Docket #195 at 31-32). The plaintiff recently described the "benefit" FS conferred upon AOS as "technical information, instruction and assistance" (Docket #232 at 6), and, accepting the allegations in the complaint as true, FS simply provided information and ideas to AOS.[8] The information and ideas that FS provided to AOS were not protected by a patent, and the court has already ruled that "FS failed to take even the most elementary steps to protect" the alleged "benefit" it provided to AOS, ensuring that such information in no way constitutes a "trade secret." (Docket #195 at 48). The presumption is that information is within the public domain unless that information is protected by some "body of law" that creates an intellectual property right. *Confold Pacific, Inc.,* 433 F.3d at 959. Here, as the information in question is "not secret and [is] not protected by any of the laws that create property rights in information, it is in the public domain and freely usable." *Id.* Put another

---

[7] FS's complaint does not list number two or number four as perceived benefits, meaning that those grounds for the unjust enrichment claim rightfully cannot be articulated as grounds to survive an adverse judgment. *See Lemmermann v. Blue Cross Blue Shield*, 713 F. Supp. 2d 791, 813 (E.D. Wis. 2010) (holding that a claim that is not "clearly articulated in a complaint" cannot be advanced to survive a judgment, as a plaintiff's pleadings must 'give the defendant fair notice of what the plaintiff's claim is *and the grounds upon which it rests.*'") (quoting *Glover v. Haferman,* 252 Fed. Appx.757, 761 (7th Cir. 2007) (emphasis in original). Regardless of the deficiency in FS's pleadings, the "tips" and "know-how" the plaintiff allegedly provided to the defendant were ideas unprotected by any body of intellectual property rights.

[8] The court's conclusion regarding the nature of FS's unjust enrichment claim is supported by FS's recent submission to the court. (Docket #232 at 6) ("[FS] does not claim a right to specific [AOS] property or funds.").

way, as a matter of law, Wisconsin's law of unjust enrichment dictates that it is "not inequitable" when one obtains the benefit of information that is not protected by some intellectual property right, such as a patent or a trade secret. *Id.; see also Major Mat Co. v. Monsanto Co.*, 969 F.2d 579, 585 (7th Cir. 1992) (holding that a claim based on the plaintiff's allegation that it "conferred a benefit" on the defendant by revealing a market which the defendant later "exploited" without compensating the plaintiff fails to state a claim under Wisconsin's unjust enrichment law); *Studio & Partners, s.r.l. v. KI*, No. 06-CV-0628, 2008 U.S. Dist. LEXIS 11321, at* 45-46 (E.D. Wis. Feb. 14, 2008) (dismissing a claim of unjust enrichment premised on the idea that the defendant "stole" an "idea" that was not a trade secret or protected by a patent); *see generally* State Bar of Wisconsin, *Wisconsin Employment Law*, § 15.82 (3d ed 2004) ("[I]t is inconsistent with the careful balancing of interests that trade secret law represents to permit an unsuccessful trade secret plaintiff to achieve the same end by asserting . . . [an] unjust enrichment [claim].")[9]  The third element of an unjust enrichment claim cannot be met in this case, and, as a result, the court is obliged to dismiss FS's remaining claim.

The court's holding is consistent with the policies underlying trade secret law, which is intended to "encourage innovation and development" without "stifl[ing] legitimate competition by prohibiting competitors from using their own independent

---

[9] The court is *not* ruling that Wisconsin's trade secret statute displaces the plaintiff's unjust enrichment claim.  Rather, the court finds Wisconsin's trade secret law instructive on the extent of an unjust enrichment claim under Wisconsin law.

discoveries, public information, and reverse engineering." *American Can Co. v. Mansukhani*, 742 F.2d 314, 329 (7th Cir. 1984) (applying Wisconsin law); *see also Gary Van Zeeland Talent v. Sandas*, 84 Wis 2d 202, 217, 267 N.W.2d 242 (1978) (stating that Wisconsin law gives special protection to trade secrets compared to confidential, non-trade secret information "for the same reason that patents and copyrights are afforded special protection, because it is the public policy assumption that, by giving special protection to inventors, authors and composers, an incentive will be afforded to creativity and that the benefits will inure to the general public."). To ensure that trade secret law does not reach so far as to stifle competition, "one who claims a trade secret must exercise eternal vigilance in protecting its confidentiality." *RTE Corp. v. Coatings, Inc.*, 84 Wis. 2d 105, 118, 267 N.W.2d 226 (1978). In fact, if an owner of information "disregards caution and fails to take steps to safeguard against disclosure," Wisconsin courts find that the owner "courted his [or her] own disaster," meaning that the equities of the situation do not afford the plaintiff any relief under the law. *Id.* Here, given the court's earlier ruling, the plaintiff's disclosure of information unprotected by any body of intellectual property law to the defendant outside of any sort of confidential relationship means that it was not unjust for AOS to allegedly use FS's information.[10]

---

[10] Wisconsin law is not unique in disallowing unjust enrichment claims that are based on the use of information that is not a trade secret. *See, e.g., Warner v. Ford Motor Co.,* 331 F.3d 851, 856 (Fed. Cir. 2003) (affirming the dismissal of an unjust enrichment claim based on South Dakota law based on a device that was neither novel or in the public domain); *see also Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1265 (7th Cir. 1992) ("Unless defendants misappropriated a (statutory) trade secret, they did no legal wrong") (Illinois law).

There is another reason, related but separate from the above analysis, as to why the third prong of an unjust enrichment claim cannot be met in this case: AOS's retention of the information in question is not viewed as inequitable under Wisconsin's law of unjust enrichment because FS "shared" that information when the parties were merely contemplating working together. In FS's complaint, with respect to the unjust enrichment claim, the plaintiff states that it provided AOS with information that is the basis for the "benefit" that the plaintiff alleges the defendant received. (Compl. ¶¶ 16, 31). However, as the plaintiff has readily acknowledged, and as the court has already ruled, there was no contractual relationship between the parties, such that AOS was committed to compensating FS for any information that AOS received from the plaintiff. (Docket #195 at 56). As this court noted in the summary judgment order, and as the complaint indicates, before even formally meeting in person with AOS, FS willingly disclosed information to AOS without any request for that information by the defendant when the parties were exchanging letters with regard to whether they wanted to have a business relationship. *Id.* at 54-55. The issue is whether the AOS's retention of information provided to the defendant outside of any sort of formal business relationship is inequitable. The law is clear: when one party, without any request, willfully provides its property to another, it is not unjust for the latter party to retain that property. *See Ludyjan v. Cont'l Cas. Co.*, 2008 WI App 41, ¶ 11, 308 Wis. 2d 398, 747 N.W.2d 745, (Ct. App. 2008) ("We suppose one could say that the [defendants] 'retained' the [property

"dumped" on them by the plaintiffs], at least for a while, but they certainly did not do so under circumstances that made it unjust for them not to pay, as the third element of unjust enrichment requires"); *see also Ind. Lumbermens Mut. Ins. Co. v. Reinsurance Results, Inc.*, 513 F.3d 652, 656 (7th Cir. 2008) (Indiana law) ("One who voluntarily confers a benefit on another, which is to say in the absence of a contractual obligation to do so, ordinarily has no legal claim to be compensated"); *Restatement (First) of Restitution* § 2 cmt a (1937) ("[A] person should not be required to become an obligor unless he so desires . . . [w]here a person has officiously conferred a benefit upon another, the other is enriched but is not considered to be unjust enriched."). Here, FS opted to confer technical information to AOS without any request from the defendant and outside of any sort of formalization of the business relationship. FS could have contracted with AOS for payment in turn for the information it provided, but did not. As the Seventh Circuit has noted, "[w]hen voluntary transactions are feasible . . . it is better and cheaper to require the parties to make their own terms than for a court to try to fix them – better and cheaper that the [parties] should negotiate a price . . . in advance than for them to go running to court for a judicial determination of the just price." *Ind. Lumbermens Mut. Ins. Co.,* 513 F.3d at 656-57. Ultimately, the law must decide who bears the burden for FS's inexplicable and imprudent behavior, and the court is obliged to find that principles of equity mandate that FS be held responsible for its poor business

decision. The court thus holds as a matter of law that the allegations made in FS's complaint do not amount to an *unjust* enrichment claim.[11]

FS makes two arguments in response to AOS's motion, neither of which is remotely persuasive. First, FS argues that "unjust enrichment requires only that a benefit be conferred on the defendant." (Pl's Resp. Br. at 2). Even at first glance, the plaintiff's argument lacks credibility, as FS contradicts its own first argument a mere four lines from its argument heading in the response brief by citing the *three* elements of an unjust enrichment claim, which include beyond a benefit being "conferred" on the defendant by the plaintiff, an "appreciation or knowledge by the defendant of the benefit" and an "acceptance or retention by the defendant of the benefit under circumstances making it inequitable for the defendant to retain that benefit." *Id.* The plaintiff's initial argument then changes, in that FS argues that "it is not necessary to prove fault or wrongdoing by the defendant to establish unjust enrichment." *Id.* The court agrees in part with FS's variation on its initial argument: fault indeed does not need to exist in order for a plaintiff to assert an unjust enrichment claim. However, a defendant being at fault is not the equivalent as an

---

[11] The court notes that, in boilerplate fashion, FS's complaint alleges that AOS "accepted the benefit of [FS's] assistance under such circumstances that it would be inequitable for the defendant to retain the benefit without payment." (Compl. ¶ 34). Such wholly conclusory allegations, without anything more, run afoul of the Federal Rules of Civil Procedure, which require that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)) (emphasis added) (holding that a plaintiff's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" – that is, "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

enrichment being "wrongful." *See* BLACK'S LAW DICTIONARY (6th Ed.1990) (defining wrongful as "injurious, heedless, unjust, reckless, unfair; it implies the infringement of some right, and may result from disobedience to lawful authority"); *see also* WEBSTER'S INTERNATIONAL UNABRIDGED DICTIONARY (3d Ed. 1971) (defining wrongful to include "injurious, unjust, unfair. . . not rightful. . . having no legal sanction . . .unlawful.") The word "wrongful" as used in the context of *Abbott Laboratories,*[12] 33 Wis. 2d at 468 ("Unjust enrichment, however, requires a wrongful taking or appropriation of others' property to one's own use"), or other cases, such as *Major Mat Co.,* 969 F.3d at 585 ("In Wisconsin, unjust enrichment further 'requires a wrongful taking or appropriation of others property to one's own use.'") (quoting *Abbott Laboratories*), is a reference to the third prong of an unjust enrichment claim, which requires that a benefit be accepted by a defendant "under circumstances making it inequitable for the defendant to retain the benefit."[13] *Watts v. Watts*, 137 Wis. 2d 506, 531, 405 N.W.2d 303 (1987). As discussed above, Wisconsin law does not allow unjust enrichment claims under the circumstances described in FS's complaint because principles of equity allow a defendant to use information that is

---

[12] FS dismisses *Abbott Laboratories* as an "older case." (Pl.'s Resp. Br. at 3 n.1). Given the Seventh Circuit's approval of the language in *Abbott Laboratories,* the court does not give much credence to the plaintiff's *ad hominem* attack.

[13] For this reason, the court finds nothing wrong with the *Abbott Laboratories* court's citation to *General Acc. Fire & Life Assur. Corp. v. Bergquist*, 15 Wis. 2d 166, 111 N.W. 2d 900 (1961).

unprotected by intellectual property law and shared outside of any sort of contractual arrangement.[14]

Given the lack of support within the case law for its first argument, FS does what desperate parties do: attempt to distinguish away every case cited by the opponent. FS argues that *Abbott Laboratories* is inapplicable because that was a case where "no benefit was conferred," instead of a case where there was "no inequity" in allowing the defendant to retain the benefit. (Pl.'s Resp. Br. at 5). This is nonsense. In *Abbott Laboratories*, the plaintiff brought suit against its former employees and their new employer alleging, in relevant part, that its former employees received the benefit of learning about "cyclamate technology" and the plaintiff's "marketing program," including the plaintiff's "customer list." *Abbott Laboratories,* 33 Wis. 2d at 452-53. The Wisconsin Supreme Court, without

---

[14] FS's citation to *Lindquist Ford, Inc., v. Middleton Motors, Inc.,* 557 F.3d 469 (7th Cir. 2009), is of no avail. The *Lindquist Ford, Inc.* court used as an example of potential unjust enrichment the situation where a person who builds their house on the wrong plot of land, resulting in a windfall for the defendant. *Id.* at 480. Of course, that example, unlike the present case, does not involve intangible information as the source of the "benefit." Moreover, the Seventh Circuit's example was not intended as explanation for when "a claim of unjust enrichment is proper" or how inequitable action need not occur for there to be unjust enrichment, as FS asserts. (Pl.'s Resp. Br. at 3). Rather, the Seventh Circuit used the example to show how parties "need not be in any prior relationship" for there to be potential unjust enrichment. *Lindquist Ford, Inc.,* 557 F.3d at 480. The Seventh Circuit's example is borrowed from the RESTATEMENT (FIRST) OF RESTITUTION, which states that a person, who in the mistaken belief that he is the owner has caused improvements to be made upon the land of another, is "*not* entitled to restitution from the owner for the value of such improvements. *See* RESTATEMENT (FIRST) OF RESTITUTION § 42 (1937). It is only when the person providing the benefit was *reasonable* in their mistake that restitution in a limited amount is allowed. *Id.* § 42(1). The restatement's view has been widely supported in Wisconsin case law. *See* Arpin v. Burch, 68 Wis. 619, 32 N. W. 681 (1887); *see also Schultz v. Carroll,* No. 85-0948, 131, Wis. 2d 590, 1986 Wisc. App. LEXIS 3429, at *3 (Ct. App. 1986). In sum, the situation has to be inequitable in order for the court to find unjust enrichment. Here, for the reasons discussed in the body of this order, given the allegations made by FS, there are no inequities at play in this case and, therefore, the third prong of unjust enrichment is not met.

mentioning the benefit prong of an unjust enrichment claim, held that the plaintiff did not have a viable unjust enrichment claim, as no "wrongful taking or appropriation" occurred when the defendants obtained information that was not protected by Wisconsin's trade secret laws.[15]  *Id.* at 468.

FS distinguishes *Confold Pacific* by arguing that in that case "the benefit was conferred officiously."[16]  (Pl.'s Br. at 5).  However, the court finds *Confold Pacific* indistinguishable from the present case.  In fact, the facts of *Confold Pacific* are startling similar to those in this matter.  In *Confold Pacific*, the defendant, Polaris, voicing interest in having a company "design . . . a returnable container" for a snowmobile, sent a request to the plaintiff to submit a design, which the plaintiff did.  433 F.3d at 954.  Nothing came as result of the plaintiff submitting its design to Polaris, but "a few years later" the defendant "designed a returnable container and subsequently began using containers manufactured by a firm to which it had given the design."  *Id.*  The plaintiff sued Polaris for unjust enrichment, claiming that Polaris' design was "based on the design that Confold had submitted to Polaris."  *Id.*  However, the court found that, given that Confold's designs were unprotected by any body of intellectual property law, principles of equity dictated that Polaris was free

---

[15] Later in its brief, FS tries to distinguish *Abbott Laboratories* based on the fact that the customer list in that case was "widely available."  (Pl.'s Resp. Br. at 6).  There is nothing to indicate the "availability" of the customer list was a fact that was dispositive on the unjust enrichment issue in *Abbott Laboratories.*  Moreover, for the reasons discussed in the body of this order, there is no substantive difference between the information at issue in *Abbott Laboratories* and this case.

[16] The court notes that the *Confold Pacific* court never discussed the issue of whether the plaintiff conferred a benefit officiously.  The focus of the court's analysis was on the nature of the benefit in question.  433 F.3d at 957-59.

to use the information at issue to its benefit.  *Id.* at 859.  Here, just as in *Confold*

*Pacific:* (1) the defendant voiced an interest in having a working relationship with the

plaintiff; (2) the plaintiff, outside of any sort of contractual relationship, opted to

provide the defendant with information about a product; and (3) the defendant

decided to produce a similar product on its own.  The results in both case should be

identical.[17]

FS argues that *Major Mat* is inapposite because that is a "case where no

benefit was conferred."  (Pl.'s Resp. Br. at 6).  The *Major Mat* case, which this court

is well acquainted with (*see* Case No. 87-CV-0595), had perhaps the weakest of all

unjust enrichment claims, in that the plaintiff argued that it "conferred a benefit on

Monsanto" by informing the defendant about an existing market for golf tee mats.

969 F.2d at 585.    The Seventh Circuit found that "exploiting an already existing

market" was as unobjectionable under Wisconsin's unjust enrichment law as was the

defendant's use of  "customer lists and marketing knowledge" in *Abbott Laboratories.*

*Id.*  The *Major Mat* court did not state that the plaintiff lacked any evidence to support

its claim on the benefit prong of an unjust enrichment claim; rather, the Seventh

Circuit found that an unjust enrichment claim's requirement of a "wrongful taking or

appropriation" was not met in that case.  *Id.*

---

[17] Frankly, the court is astonished that FS's attorneys opted to pursue this claim in light of the ruling in *Confold Pacific*.  FS, later in its brief, attempts to distinguish *Confold Pacific*, arguing that AOS "did not seek design submissions from multiple firms."  (Pl.'s Br. at 6).  There is no reason why this fact was dispositive with respect to the unjust enrichment issue discussed in *Confold Pacific*.  FS's relationship with AOS was as legally insignificant as Confold's relationship with Polaris.

FS does not attempt to discuss any of the other cases cited by AOS, including, most notably, *Studio & Partners,* 2008 U.S. Dist. LEXIS 11321, at *45. The *Studio & Partners* case, which is controlling, is remarkably similar to the facts in this case, as well.[18] In that case, an Italian company that designed furniture brought suit against a Wisconsin corporation that both manufactured and sold furniture to businesses alleging, in relevant part, an unjust enrichment claim. (Case No. 06-CV-0628 Docket #358 at 1). Unlike this matter, the two companies actually worked together for two years trying to bring a particular piece of furniture to market, with the plaintiff alleging that "it contributed significant innovations and know-how to the effort." *Id.* at 3. At the end of the two year business relationship, the defendant in *Studio & Partners* stated it "was not interested in going forward with the design." *Id.* Nonetheless, and much to the plaintiff's chagrin, the defendant continued with producing the piece of furniture, netting it some $50 million dollars in sales. *Id.* This court dismissed the unjust enrichment claim, despite the fairly egregious allegations by the plaintiff, as an unjust enrichment claim cannot be used when the plaintiff failed to protect itself through the use of intellectual property law or through contract law. 2008 U.S. Dist. LEXIS 11321, at *45. While the result may have been harsh to the plaintiff, the alternative would have been worse, as elevating an unjust enrichment claim in such a manner would effectively erode any reason to have trade secret and patent protections under the law or have contract law. *Id.* The court is not only

---

[18] In fact, as noted in the body of the order, the facts that make *Studio & Partners* different from this matter only cut against FS.

bound by this case law, but finds it extremely persuasive and extremely telling that FS failed to even discuss the case.

FS's second argument is equally unavailing. The plaintiff argues that the "parties' summary judgment briefing and the Court's order denying [AOS's] Motion for Summary Judgment as to [FS's] unjust enrichment claim highlight numerous disputed issues of material fact concerning the appropriation of [FS's] proprietary knowledge and contribution to" AOS's product. (Pl.'s Resp. Br. at 7). However, as discussed above, there is no dispute with respect to the third prong of the unjust enrichment claim, as Wisconsin's law of unjust enrichment dictates that equity allows AOS to retain the benefit of the information FS provided. FS argues that it "could persuade the jury that it would be unjust for [AOS] to retain the benefit conferred by [FS]" (Pl.'s Resp. Br. at 6), but Wisconsin courts, weighing the equities of this situation, have already determined as a matter of law that a claim of unjust enrichment cannot survive under circumstances such as these, and it is not for the jury to decide. FS asserts that it was "wrongful" for AOS to accept the benefit the plaintiff conferred, as FS "believed it was operating in a 'working' relationship to develop concepts for suction entrapment with" the defendant. *Id.* at 7. The plaintiff cites to *Watts,* 137 Wis. 2d at 530, for the contention that the "expectations of the parties are relevant to [FS's] unjust enrichment, particularly whether 'under the circumstances' it would be inequitable to allow [AOS] to retain the benefit without paying value." *Id.* at 7 n.4. The portion of the *Watts* case that FS cites to in no way

makes the bold claim that as long as a plaintiff expects to be compensated it can be. 137 Wis. 2d at 530. Rather, an unjust enrichment claim is based on moral principles that restitution must occur when justice requires. *Id.* As stated above, Wisconsin courts have already weighed the equities at play in this case, and a party's unreasonable expectations, such as the expectation to be compensated for providing information given during an initial conversation with another party regarding a potential business operation, does not warrant restitution.[19]   The alternative would be the death of contract law, as, under FS's unique take on the law, all a party must do to survive summary judgment and to send contract damages to a jury is to unilaterally assert that it believed it had an agreement with the opposing party, no matter how patently absurd its beliefs were.[20]   Such a view of the law borders on the frivolous, and the court is tempted, but will refrain from examining whether the plaintiff's attorney's assertions warrant examination for violating Fed. R.

---

[19] Of course, this is assuming there is any evidence that FS had an expectation that it had an agreement to "share in the development and eventual profit of the product." (Pl.'s Resp. Br. 7-8).  Even if FS's unique take on the law was in fact the law, the court could not conclude that a reasonable jury would ever find for FS on its unjust enrichment claim, given FS's own statement to AOS made in September of 2003 that stated that "Fail-Safe has not granted any rights to AO Smith for the commercial use of any proprietary intellectual property, developed and owned by Fail-Safe, and there is no formal agreement in place between our companies." (Docket #122 Ex. 21). However, the court need not reach this issue in the order for the reasons stated above.

[20] FS argues that its contribution is a "far cry" from the musicians example cited in *Indiana Lumbermens Mut. Ins. Co,* 513 F3d at 656.  (Pl.'s Resp. Br. 7-8).  The court finds the musicians analogy perfectly apt for this matter.  The fact that AOS initiated contact with FS makes no legal difference, and the plaintiff tellingly cites no case law that comes close to supporting its viewpoint. The court wholly endorses the view of the defendant in its reply brief: "In FS's misguided view, a party who fails to protect its ideas or information by securing intellectual property rights or by contract, could nevertheless voluntarily share its ideas or information and then sue for unjust enrichment."  (Def.'s Reply Br. at 7).

Civ. P. 11(b).[21]  The court will dismiss FS's remaining claim, and denies the remaining motions (Docket #233, #240, #246, #252, #263, #267, #269) as moot, as the issues contained in those motions are not relied on in this court's order.[22]

Accordingly,

**IT IS ORDERED** that plaintiff's motion for supplemental discovery (Docket #233) be and the same is hereby **DENIED** as moot;

**IT IS FURTHER ORDERED** that defendant's motion for judgment on the pleadings (Docket #237) be and the same is hereby **GRANTED**;

---

[21] The court does not make the above statement lightly.  While the court could point to several items on the docket for this case that violate Rule 11(b), the court notes one particularly egregious example.  FS's first argument is that unjust enrichment does not require a wrongful act.  To support this contention FS cites the *Confold Pacific* decision.  The following is the direct quote from FS's brief: "However, the [*Confold Pacific*] court was careful to note that if the snowmobile [sic] saved money by copying the container manufacturer's design, 'that was a gain to which the [container manufacturer] is entitled.'"  (Pl.'s Resp. Br. at 6) (quoting *Confold Pacific*, 433 F.3d at 957).  FS selectively quotes from the *Confold Pacific* decision, however, leaving out an extremely important part of the sentence and one that entirely eviscerates FS's argument that a "wrongful act" is not needed for an unjust enrichment claim.  The following is the unaltered quote from the Seventh Circuit: "If Polaris by copying (we are assuming) ConFold's design saved money, that was a gain to which ConFold is entitled – **provided the copying was a wrongful act**." *Id.* (bolding added).  The plaintiff similarly selectively quoted from the Wisconsin model jury instructions in its brief.  (Pl.'s Resp. Br. at 2-3).  Courts have readily sanctioned parties for "distorting what [a case has] stated by leaving out significant portions of the citations or cropping one of them." *Precision Specialty Metals, c. v. United States*, 315 F.3d 1346, 1357 (Fed. Cir. 2003).  In this matter, the court will use its discretion to refrain from additional examination of this issue, but the attorneys who submitted the response brief will need to "stop-and-think" before submitting a similar brief before this or any other court in the future.  *See* Advisory Committee Notes on Fed. R. Civ. P. 11 (1993 Amendments).

[22] The court notes that AOS raises a new argument in its reply brief that FS is barred from pursuing an unjust enrichment claim as the two parties have entered into a contract via the confidentiality agreement.  (Def.'s Reply Br. at 5-6 n.4).   While the court finds this argument persuasive, this argument should have been made long ago, and the court cannot entertain arguments raised for the first time in a reply brief.  *See Hess v. Reg-Ellen Mach. Tool Corp.*, 423 F.3d 653, 665 (7th Cir. 2005).

**IT IS FURTHER ORDERED** that defendant's motion to exclude (Docket #240) be and the same is hereby **DENIED** as moot;

**IT IS FURTHER ORDERED** that the plaintiff's unjust enrichment claim be and the same is hereby **DISMISSED with prejudice**;

**IT IS FURTHER ORDERED** that defendant's motion to seal (Docket #244) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that defendant's motion *in limine* to limit evidence to the claim of unjust enrichment (Docket #246) be and the same is hereby **DENIED** as moot;

**IT IS FURTHER ORDERED** that defendant's motion to seal (Docket #250) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that defendant's motion in *limine* to exclude experts (Docket #252) be and the same is hereby **DENIED** as moot;

**IT IS FURTHER ORDERED** that plaintiff's motion to seal (Docket #258) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that plaintiff's motion to seal (Docket #261) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that plaintiff's motion for reconsideration (Docket #263) be and the same is hereby **DENIED** as moot;

**IT IS FURTHER ORDERED** that plaintiff's motion to seal (Docket #265) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that plaintiff's motion for reconsideration (Docket #267) be and the same is hereby **DENIED** as moot;

**IT IS FURTHER ORDERED** that plaintiff's motion for leave to file supplemental expert report (Docket #269) be and the same is hereby **DENIED** as moot.

The clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 14th day of January, 2011.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge